The State of Ohio, Appellee, *v.* Willey, Appellant.

(No. CA-637—Decided December 11, 1981.)

*Mr. James R. Scott,* prosecuting attorney, for appellee.

*Mr. Craig Stephens* and *Mr. Lewis M. Tingle,* for appellant.

McKEE, J. On July 31, 1979, the Holiday Inn at Cambridge, Ohio sustained a fire and ten persons perished as a result of smoke inhalation. Defendant-appellant, Gerald G. Willey, who was indicted for one count of aggravated arson and ten counts of aggravated murder, appeals his convictions and sentence following a trial to a jury which found him guilty of one count of aggravated arson and ten counts of involuntary manslaughter.

The evidence indicated that defendant was a guest at the motel along with other members of a road painting crew. Defendant was involved in an argument in the lounge of the motel and in the parking lot. He had been drinking and was enraged at the motel.

Evidence produced indicated he told his roommate he was going to "burn the place down." He did have gasoline available in a tank on the truck in the lot and returned to the motel with a five-gallon gasoline can. His roommate heard the sound of liquid being poured and defendant later woke him and told him, "The place is on fire."

Expert testimony identified the gasoline as the accelerant used in the fire.

Defendant was not arrested immediately following the fire, but was arrested March 9, 1980, following an extended investigation. The original arrest was on one count of arson, and he posted bail and was released on March 17, 1980.

On April 9, 1980, defendant was indicted on the charge first described and taken back into custody for arraignment April 11. He remained in custody thereafter.

On April 24, his counsel filed a motion for change of venue which was set for hearing May 16. At that hearing defendant introduced evidence of media coverage and community involvement and knowledge as to the fire. Also included were certain survey results as to representative voter knowledge as to the defendant's name and the events. On May 29, the court, after consideration of the evidence, overruled the motion subject to its being renewed at the time of the voir dire of the jury panel. A pretrial was set for June 11, 1980.

At the pretrial the case was assigned for trial June 18. The court then considered the unavailability of the only regular-sized courtroom on such date, and ordered the trial continued to July 10. Defendant objected to such continuance.

On July 10, the trial commenced with the selection of a jury which continued until the afternoon of July 17 when the jury was empanelled. The motion for change of venue was renewed and overruled.

Trial itself commenced July 18 and was completed on the morning of July 23 when the jury retired to deliberate. The jury was sequestered during such deliberations and returned with the verdict on the evening of July 25.

Defendant presents six assignments

of error which will be considered in the order made.

"1. The Appellant submits that the empaneling of a juror who expressed a fixed opinion that 'the defendant is guilty of something' violated his Sixth Amendment right to trial by an impartial jury and the Due Process Clause of the Fourteenth Amendment."

The juror in issue upon initial inquiry stated that a man indicted for aggravated arson and aggravated murder "had a serious problem" and that he felt defendant was "probably guilty of something." Once he was advised as to the law and the judge's function, and in response to his ability to follow the law, he responded, "I would do it."

While the juror was not sure of any details he had read and felt them to be "someone's opinion" rather than fact, he further stated, "Those opinions would be out of my mind." As to hearing the facts in the courtroom, he replied, "I would have an open mind." He further avowed that if he was not convinced beyond a reasonable doubt of the guilt of the defendant, "I would say not guilty."

The trial judge was able to observe the prospective juror throughout and judge his sincerity, ability, manner of answering, qualifications, candor, and credibility. In overruling the defense challenge for cause, the court summarized his observations as follows:

"The Court listened very attentively to all of the questions of counsel and the answers of the prospective juror and felt that both counsel did very well in getting to the nubbins of the matter and that the juror is an intelligent person who did very well in answering those questions truthfully and openly and to the best of his ability without knowledge of law or the concepts really of trial saying that which he would do if he were a juror. And it is certain that he is a juror that knows nothing about this fire from any personal contact with anyone that had anything to do with the motel or from curiosity from going around and trying to look himself; that he has stayed completely aloof from it from all intents and purposes the same as if he didn't live here and the only thing that brought about any answers in the questionnaire which are questionable is his failure to fully appreciate the niceties of legal procedures which he now understands after explanation and the way and the manner in which he answered these questions made this Court feel that he is going to be an excellent juror. Therefore, the Court disallows the objection and finds the prospective juror number 9 on the Court's chart."

Defendant seeks to have this court compare this juror with the jurors seated in *Irvin* v. *Dowd* (1961), 366 U.S. 717. In that case, which involved a number of brutal murders, the court found that the defendant faced a "barrage" of publicity not only as to his guilt but as to the punishment he should face. The stories included references to his criminal background and prior criminal behavior. His confession was printed along with reported efforts on his part to plead guilty to save his life. Criticism was printed as to his court-appointed counsel defending him. The court summarized the coverage prior to trial as that which "sustained excitement and fostered prejudice."

The coverage during jury selection indicated that many had their minds made up, that defendant was guilty, and that they thought he should be "hanged." The court found that from three hundred seventy prospective jurors, ninety percent had an opinion of guilt ranging from suspicion to absolute certainty, and that ten were never asked if they had an opinion.

The transcript of the voir dire revealed a "pattern of deep and bitter prejudice" was shown to exist. Of the twelve jurors seated, eight thought the defendant guilty and were familiar with material facts of the case. One seated juror indicated it would take evidence to overcome his belief of guilt and another

couldn't give the defendant the benefit of the doubt that he was innocent.

The *Irvin* court properly found there should have been a change in venue and that the seated jurors were not impartial. There is, however, no comparison with the case before us. There is, in fact, a stark contrast with the case presented to us. The current defense counsel, in response to inquiry by the court, indicated they were not claiming that the local media had not followed the "best procedure available to the press in making the reports" that they made. They further indicated no claim to any "indication by prejudice" toward whoever might be responsible for the fire and the reporting.

The *Irvin* court does give us guidelines as to the determination whether a juror is impartial or not. The court stated at 366 U.S., at 722-723:

"It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."

The court further stated the following with approval in a footnote:

" '[L]ight impressions which may fairly be supposed to yield to the testimony that may be offered; which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror; but that those strong and deep impressions, which will close the mind against the testimony that may be offered in opposition to them; which will combat that testimony and resist its force, do constitute a sufficient objection to him.' " *Id.* at fn. 3, quoting Chief Justice Marshall in 1 Burr's Trial 416 (1807).

The challenged juror's statement that he was approaching the case with an "open mind" and the judge's finding of his credibility qualify him as an impartial juror within these bounds and the first assignment of error is overruled.

"2. The trial court erred in failing to grant Appellant a speedy trial within the time limits of Ohio Revised Code 2945.71, thus denying Appellant's statutory rights and Constitutional rights under the Ohio and United States Constitutions."

The time of trial in the case *sub judice* does not even begin to approach a violation of constitutional speedy trial limits. *Barker* v. *Wingo* (1972), 407 U.S. 514.

The case would, on first blush, appear to exceed the trial limit established in R.C. 2945.71 in that it was later than either June 20 or June 22, 1980 (the last days for trial as claimed by defendant). These dates were computed with no allowance for any periods which might be tolled under R.C. 2945.72.

This latter section in subparagraph (E) provides for an extension of "[a]ny period of delay necessitated by reason of a * * * motion * * * made or instituted by the accused; * * *" Such a motion includes a motion to suppress. *State* v. *Walker* (1974), 42 Ohio App. 2d 41 [71 O.O.2d 238]. We believe, and so hold, that a motion for change of venue is also a motion of such nature to extend the time for trial.

Once such a motion is filed the court cannot make definite trial plans and assignments until there is a determination as to whether or not the motion will be granted and where the trial will be held. Computing the days between April 24 and May 29, 1980, and adding even to defen-

dant's claimed date of June 20, 1980, extends the time well beyond July 10.

Even if such extension were not permitted the case was assigned within time and extended by the court by entry for a valid reason before such time expired. The trial of another criminal case utilized all reasonable court facilities and served to interrupt jury selection in this case when the jury needed the court room facilities to return a verdict in the other criminal case. This is within the permissible intent of *State* v. *Lee* (1976), 48 Ohio St. 2d 208 [2 O.O.3d 392].

As this court stated in *State* v. *Hayward* (Dec. 7, 1981), Guernsey App. No. CA-644, unreported, at page 14 of the opinion:

"We find further that the purpose of the 'speedy trial statute' is to make certain that there are no inexcusable delays caused by counsel for the State or by the court and that defendants be brought to trial within a reasonable period of time. We find no such delay herein."

The second assignment of error is overruled.

"3. The trial court grossly abused its discretion by failing to grant Appellant's motion for change of venue, thus denying Appellant his Constitutional right to trial by a fair and impartial jury, guaranteed by the Ohio Constitution, Article I, Section 10, and the United States Constitution, Amendments VI and XIV.

"4. The trial court grossly abused its discretion by failing to grant Appellant's motion for sequestration of the jury during trial, thus violating Appellant's right to a fair and impartial jury, guaranteed by the Ohio Constitution, Article I, Section 10, and the United States Constitution, Amendments VI and XIV."

These assignments will be considered together as they relate to the atmosphere surrounding the trial. In this connection the court would again refer to the discussion of *Irvin* v. *Dowd, supra,* as contained following the first assignment of error.

This court again considers the acknowledgment by defense counsel that the media reporting was of a non-prejudicial nature. The reporting of this case was not isolated to Guernsey County. During the voir dire, one prospective juror stated he became aware of it through news reports in South Carolina, and another became aware through television reports while in Georgia.

The primary basis for the requested change of venue was evidence submitted to the court by defendant of a telephone survey of the community conducted by a group from Kent State University. The survey was conducted in one evening on Thursday, May 8, 1980. Of seventeen thousand registered voters in the community, it consisted of one hundred eighty-three telephone calls which netted one hundred six telephone interviews. The results were represented to indicate that twenty-six percent recognized defendant's name when asked and an additional nineteen percent recognized the name after the fire was mentioned. Of those telephoned, thirty-three percent remembered two or more details of the fire.

The results of this survey, if accepted as representative of the community, are not so shocking as to require a change of venue prior to attempting to empanel a jury. As a jury was empanelled, the trial judge had an actual basis to determine whether the prevailing attitude was prejudice and bias, or if it, in fact, was impartial. The judgment of impartiality might well ultimately have been indicated by the lengthy and conscientious deliberations and the fact that the defendant was not convicted as charged.

This was not a carnival as described in *Sheppard* v. *Maxwell* (1966), 384 U.S. 333 [35 O.O.2d 431].

The facts here put this well within the guidelines expressed on both issues in *State* v. *Osborne* (1976), 49 Ohio St. 2d 135 [3 O.O.3d 79], and both assignments of error are overruled under authority of such case.

"5. The trial court's refusal to grant

a motion for leave to file a motion for a new trial based on newly discovered evidence in the form of an interoffice correspondence which established that other individuals were suspected of committing the crimes for which the Appellant was convicted constituted a gross abuse of discretion which warrants reversal.'

Defendant's motion for leave to file a motion for new trial pursuant to Crim. R. 33 was filed March 13, 1981. The motion was based upon an interoffice memo of Holiday Inn, Inc. dated August 9, 1979. This memo was obtained by one of the defense counsel on March 7, 1981, in conjunction with his defense of Willey in civil actions arising from the fire.

The nature of the memo and its significance together with conclusions as to its availability are well-described by the trial court in its ruling of April 3, 1981:

"The Court notes that the document alleged to be newly discovered consists of an interoffice communication dated August 9, 1979 between personnel of the Holiday Inn, Inc. The memorandum contains a description of construction of the motel damage sustained, a listing of the dead and injured, general information about the fire inspection, physical evidence of arson, action taken when the fire was first discovered, a general list of possible suspects and observations of factors which may have contributed to the fire. The record before the Court following the hearing of March 20, 1981, shows that the prosecution first saw the report in question at the time of the filing of the Motion for New Trial.

"Defendant claims that subparagraph VI(B) of the memorandum, entitled: 'Possible Suspects' is newly discovered evidence. That general investigatory report of personnel from the loss prevention division of Holiday Inn, Inc., listed a number of persons who were 'possible suspects.' The list included the Defendant herein as well as other members of his road painting crew as well as several other individuals. The report gives no direct information which would tie any one of the individuals to the fire. It is a general preliminary investigatory summary of possible causes and possible suspects, made shortly after the fire.

"The document in question even if it had been in the hands of the prosecution prior to the time of trial is of that class of information not subject to discovery under Rule 16. It is a generalized list of potential suspects. Evidence as to potential suspects becomes relevant and discoverable only when it rises to the level of actual material evidence pointing toward the guilt of a party other than the Defendant. The document in question is based upon initial inquiry, hearsay, speculation and possibility.

"From the evidence adduced at the hearing on March 20, 1981, it appears that at least as of October 15, 1980, Defendant's counsel was also the defense counsel in a civil action filed against the Defendant, which civil action arose from the fire. At that time discovery was possible and Defendant could have obtained discovery of this very document. No discovery was sought in the civil case. Defense counsel states he learned of the document from other counsel in the civil action."

The court's conclusions are well-substantiated in the motion hearing transcript. It is significant to note that the transcript of proceedings of the entire case indicates that this case was well- and professionally tried by both counsel for the state and counsel for the defendant. A fair trial resulted for both parties. Hearsay, speculation and innuendo would not have been relevant, admissible, or helpful for either party.

The ruling on defendant's motion is within the discretion of the trial court. It will not be disturbed without a clear showing of abuse, *State* v. *Williams* (1975), 43 Ohio St. 2d 88 [72 O.O.2d 49]. There was no such showing. The fifth assignment of error is overruled.

"6. The Appellant's convictions and

consecutive sentences for involuntary manslaughter and the lesser included offense of aggravated arson resulted in a violation of the Double Jeopardy Clause of the Fifth and Fourteenth Amendments to the United States Constitution and Ohio Revised Code Section 2941.25.''

This court was faced with this identical question in *State* v. *Leonard* (June 3, 1981), Stark App. No. CA-5535, unreported. We there held that causing physical harm to an occupied structure by means of fire and causing the deaths of victims located within the structure were offenses of dissimilar import. We specifically held that there was no merger under R.C. 2941.25 and that there was no double jeopardy.

The case of *State* v. *Frazier* (1979), 58 Ohio St. 2d 253 [12 O.O.3d 263], speaks to a similar question and reaches the same result. The sixth assignment of error is overruled.

The judgment of the court of common pleas is affirmed and the cause is remanded for execution of sentence.

*Judgment affirmed.*

HENDERSON, P.J., and MILLIGAN, J., concur.