**The STATE of Ohio, Appellee,**

**v.**

**ADAMS, Appellant.**

[Cite as *State v. Adams* (1991), 74 Ohio App.3d 759.]

Court of Appeals of Ohio,
Ross County.

No. 1658.

Decided July 15, 1991.

*William J. Corzine III,* Law Director, and *David L. Silcott,* Assistant Law Director, for appellee.

*Hirsch, Stanhope & Co., L.P.A.,* and *Carl P. Hirsch,* for appellant.

STEPHENSON, Presiding Judge.

This is an appeal from a judgment of conviction and sentence entered by the Chillicothe Municipal Court upon a jury verdict finding Gene Adams, defendant below and appellant herein, guilty of violating R.C. 4511.19(A)(1), which proscribes the operation of a motor vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse. The following error is assigned:

"When a juror discloses that his view on cross-racial relationships is such that for reasons of racial prejudice, that juror 'does not approve' of an irrelevant but unconcealable [*sic*] and fully legal relationship between the defendant and his primary witness, a mere disclaimer by that juror that he will not permit his prejudice to color his decision is insufficient to insure a fair trial; and when said juror is challenged for cause, the court errs by not allowing the challenge."

In light of the assignment of error, the facts surrounding appellant's operation of a motor vehicle and his condition are not relevant to this appeal. The pivotal issue posited for review is whether the court erred in overruling challenge for cause of five prospective jurors.[1]

The pertinent facts are basically undisputed. The venire was composed entirely of white prospective jurors. During voir dire, the defense asserted that the evidence would unavoidably disclose that defendant-appellant was dating a white woman, and that each of them would be testifying. The court freely permitted counsel to inquire into the attitudes, opinions, and biases of the panel concerning cross-racial dating. Five of the eight prospective jurors indicated that they disapproved of interracial dating, and three of the prospective jurors stated that, essentially, they had no objection to it. Defense counsel, at the end of his questioning of the prospective jurors, moved to excuse for cause each of the five jurors who indicated their disapproval of interracial dating. Of the jurors who disapproved of interracial dating, when examined by the court and counsel, all indicated that they felt this was not relevant to the case and had nothing to do with the charge of operation of a vehicle while under the influence of alcohol and affirmatively stated that their disapproval of interracial dating would not enter into their decision. Appellant subsequently utilized all of his peremptory challenges.

---

1. Of the five jurors who were challenged for cause, one was excused *sua sponte* by the court for a nonracial reason, and three were removed by the appellant by use of peremptory challenges. One of the prospective jurors opposed to interracial dating, Stanley Howard, served on the jury.

Section 10, Article I of the Constitution of Ohio provides, *inter alia*, that "[i]n any trial, in any court, the party accused shall be allowed * * * a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed." Crim.R. 24(B) implements such right by providing, in the part here pertinent, the following:

"Challenge for cause. A person called as a juror may be challenged for the following causes:

" * * *

"(9) That he is possessed of a state of mind evincing enmity or bias toward the defendant or the state; but no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.

" * * *

"The validity of each challenge listed in this subdivision shall be determined by the court."

Appellant cites in support of his assignment of error the following non-syllabus language in *Fouts v. State* (1857), 7 Ohio St. 471, at 475:

"Any previously formed opinion upon the question to be tried, or any partiality or prejudice against a party whose interests are involved, which will be likely to lead to conclusions unfavorable to him, in the determination of the issue, are causes which will warrant the challenging of a juror, and require his exclusion from the panel, as being unsuitable to serve."

We disagree with appellant's reliance upon *Fouts*. The fallacy in appellant's argument is the assumption that disapproval of interracial dating manifests a bias or prejudice requiring exclusion. The focus is not upon abstract social, moral, or religious views of a prospective juror but rather upon whether the belief is such that it interferes with performance of duty as a fair, impartial, and neutral juror.

Whether or not to sustain a challenge for cause of a prospective juror rests within the sound discretion of the court. *State v. Grubb* (1988), 44 Ohio App.3d 94, 541 N.E.2d 476; 64 Ohio Jurisprudence 3d (1985) 441, Section 144. This is a general rule. 47 American Jurisprudence 2d (1969) 845, Section 268. The trial judge was in a position to observe the sincerity, ability, manner of answering, qualification, candor and credibility. See *State v. Willey* (1981), 5 Ohio App.3d 86, 88, 5 OBR 200, 201–202, 449 N.E.2d 471, 473–474. The Ohio

Supreme Court in *State v. DePew* (1988), 38 Ohio St.3d 275, 280, 528 N.E.2d 542, 549–550, stated the following:

"The determination of juror bias necessarily involves a judgment on credibility, the basis of which often will not be apparent from an appellate record. *Wainwright v. Witt* (1985), 469 U.S. 412, 429 [105 S.Ct. 844, 854, 83 L.Ed.2d 841, 854–855]. For this reason, ' * * * deference must be paid to the trial judge who sees and hears the juror.' *Id.* at 426 [105 S.Ct. at 853, 83 L.Ed.2d 841, 852–853]."

That the court determined that the jurors were being truthful in their statement of impartiality is reflected in the following statement by the court in overruling the challenge for cause:

"BY THE COURT: * * * Everybody, I feel, has answered honestly. We are not only trying to do justice, but also to make it appear to be done; and to quiet the fears of Mr. Adams, whether justified or not, concerning this. The facts and the way that we have been all brought up and what has gone by, we can not change that. But we can set it aside, if you will pay careful attention to the matter at hand, and not let any extraneous issue creep in. If I have your word on that, ladies and gentlemen, then, I don't have any difficulty with overruling the challenge. I would also ask that you very carefully set aside the matter that you were challenged at all, on this matter of an opinion. * * * I am certain, that if you are willing to be fair, like you said, on the one issue, then you will be fair on this and also put it aside. Do I have your word on that, ladies and gentlemen? You all seem to concur. Mr. Hirsch, I am overruling the motion that you have made."

In sum, appellant's claim that disapproval of interracial dating alone so prejudices a prospective juror from being fair and impartial that removal is required is speculative and without support in the record. We find no abuse of discretion, overrule the assignment of error, and affirm the judgment.

*Judgment affirmed.*

HARSHA, J., concurs.

GREY, J., dissents.

GREY, Judge, dissenting.

I respectfully dissent. The majority opinion misconstrues Crim.R. 24(B), I believe.

Part (9) of that rule speaks of enmity or bias, but significantly does not mention prejudice. The majority holds that since there is no showing of prejudice, there is no bias. I believe the particular choice of the word "bias" instead of prejudice by the creators of the rule was deliberate.

"Prejudice" means, according to Webster's New Third International Dictionary (1986) 1788, a "preconceived judgment or opinion." Prejudice can be put aside. For example, in *State v. Grubb, supra,* 44 Ohio App.3d 94, 541 N.E.2d 476, a sex case, some of the jurors said that they would be prejudiced by Grubb's prior convictions for other sex offenses. It is common to presume that a person with a record is more likely to be guilty, to prejudge him to be probably guilty. But the jurors in *Grubb* said that they could put aside their preconceptions and decide the case on the evidence. This is what the second part of Crim.R. 24(B)(9) talks about when it discusses how a juror may, upon proper examination by the court, be found to be able to set aside his preconceived notions about the case.

Bias is different, because biases cannot be set aside. Webster's, *supra,* at 211, defines "bias" as "such prepossession with some object or point of view that the mind does not respond impartially to anything related to this object or point of view." The death penalty is probably the best example of this because almost every American is biased on that issue, that is, they are either for it or against it on a visceral level and not likely to be convinced the other way. Bias indicates an inclination such that being impartial is almost impossible. The subsections of Crim.R. 24 list a series of potential jurors who are presumed to be biased, *i.e.,* to have a certain mindset, such as jurors with prior convictions; those who have served on the grand jury in a case, or as juror in a prior trial of the case, or related civil trial; or jurors who are related to the victim or the defendant.

Related jurors are probably the best example of bias because one can be biased for *or* against one's relatives. Some relatives are liked and some are not, and some may be so remote from family contact that a juror would have no opinion either way. Nonetheless, relatives closer than the fifth degree are not allowed to serve because they cannot change their status as relatives.

That is the real issue in this case. Can a potential juror change his mind based on evidence? If a juror has read newspaper accounts, or makes presumptions about prior convictions, or tends to believe police officers are more honest than other witnesses, he can still change his mind about his preconceived notions and decide the case impartially on the facts presented. If a juror is biased, he will retain that bias, much as a relative remains a relative.

In this case, while some of the jurors said that it did not matter to them, several jurors indicated that they had objections to interracial dating. None of the prospective jurors indicated any prejudice toward the defendant. But again, the rule speaks of "bias" not prejudice. By stating that they had some objection to a black man dating a white woman, these jurors were indicating

that somehow a *black* man dating a *white* woman is different than *a* man dating *a* woman. The interjection of the race of the couple somehow changes the reality of the situation. One might object to a tall man dating a short woman, to a fat man dating a thin woman, to an old man dating a young woman, to an Irish man dating an Italian woman, to a Christian man dating a Jewish woman, but to do so would be to admit to a bias, to an inclination, that the criterion upon which the objection is based has substance, that it is important enough to have some objection to it. In this case the race of the defendant and the woman he dated was important enough in the minds of these jurors to be objectionable.

Unlike the prejudiced juror who can be convinced to change his pre-judgment on the issue of guilt or innocence, the biased juror remains unchanged by the events of the trial. While one may strive to be unbiased and to impartially decide the case, the court places an almost impossible burden on the juror. He is not being asked to set aside what he believes *to have happened,* but rather to put aside what he believes *to be right and wrong.*

The standard for jurors is that they be, as mentioned in the majority opinion, fair, impartial, and neutral. The standard for the trial court judge in deciding challenges for cause is abuse of discretion. In all of Ross County there are, I presume, eight people who are neutral on the issue of interracial dating. Is it not an abuse of discretion to have a case tried by some jurors who object to interracial dating when other jurors are available? I feel that it is. Thus, I dissent.