This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
The appellant, Steven A. Bozsik, appeals the judgment of the Medina County Court of Common Pleas, convicting him of the aggravated murder and murder of his wife Carol Bozsik. This Court affirms Bozsik's convictions.
 I.
On December 16, 1999, the Medina County Grand Jury indicted Bozsik for the slaying of his wife Carol on November 30, 1999, with one count of aggravated murder, in violation of R.C. 2903.01(A), and murder, in violation of R.C. 2903.02(A). Each count contained a firearm specification, in violation of R.C. 2941.145. Bozsik pled not guilty, and the matter proceeded to trial.
On May 22, 2000, the trial commenced. The jury found Bozsik guilty as charged. For sentencing purposes, the trial court merged Bozsik's conviction for murder with his conviction for aggravated murder. Bozsik was sentenced accordingly.
Bozsik has timely appealed, alleging six assignments of error.
 II. FIRST ASSIGNMENT OF ERROR THE DEFENDANT-APPELLANT'S CONVICTION OF AGGRAVATED MURDER, R.C. 2903.01 AND MURDER, R.C. 2903.02(A) IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In his first assignment of error, Bozsik claims that his convictions for aggravated murder and murder are not supported by the manifest weight of the evidence. This Court disagrees.
A manifest weight challenge questions whether the State has met its burden of persuasion. State v. Thompkins (1997), 78 Ohio St.3d 380, 390
(Cook, J., concurring). In making this determination, we do not view the evidence in the light most favorable to the prosecution. Instead, this Court must:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This action is reserved for the exceptional case where the evidence weighs heavily in favor of the defendant. Id.
Aggravated murder is proscribed by R.C. 2903.01(A), which states: "No person shall purposely, and with prior calculation and design, cause the death of another[.]" The offense of murder is set forth at R.C. 2903.02(A): "No person shall purposely cause the death of another[.]"
The instant case is possessed of a voluminous record upon a trial that took place over three weeks. The case against Bozsik is built upon strong circumstantial evidence, reinforced with direct evidence,[1] such that in the aggregate Bozsik's convictions for aggravated murder and murder were supported by the manifest weight of the evidence.
The Bozsik marriage was in trouble after twelve years of marriage, and two children. The Bozsiks stopped having intimate relations in the summer of 1999. Appellant's wife, Carol Bozsik, confided her marital problems to restaurant co-workers, and her thoughts of pursuing a divorce. In August of 1999, Carol Bozsik began a relationship with restaurant patron Richard Wise, that continued up to the day of her murder on November 30, 1999. Carol's relationship with Wise (who became a regular lunch patron) led to daily telephone conversations, including calls made by Wise to the Bozsik home, swapped love notes, and a penny charm with a heart shaped hole given by Wise that Carol wore thereafter. Carol told friends that she would seek a divorce after the holidays, and that she told appellant of her plan. Indeed, on November 9, 1999, appellant asked Carol's brother about his divorce lawyer, and said "I may need one." Bozsik asked Carol's brother what he should do about Wise, who Bozsik knew had a developing relationship with Carol. Bozsik also sought to initiate a relationship with two different women via the internet.
While his marriage was in shambles, Bozsik's financial status was equally grim. On November 30, 1999, Bozsik's credit card debt was $24,600. Bi-monthly the Bozsiks owed payments of $284.85 toward their credit card debt. In 1996, appellant took out a four-year loan of $9,000 from his 401-K plan, which had to be repaid with a bi-monthly payment of $104. In 1997, appellant withdrew another $15,000 from his 401-K plan. The Bozsiks had two mortgages on their home. On November 30, 1999, the Bozsiks were behind on their two mortgage payments, behind on their real estate tax payments, and behind on their monthly household bills.
As November 30, 1999, approached, an ominous confluence of marital and financial troubles suggests a motive for Steven Bozsik to kill his wife.
By November of 1999, appellant was suddenly interested in raising the life insurance coverage on Carol from $100,000 from two policies, to a total of $225,000. Because appellant failed to get the policy signed by Carol, the improved policy technically never took effect. On November 23, 1999, Bozsik made five different phone calls to his insurance agents. Bozsik stressed to his insurance agents that the new policy on Carol had to take effect before December 1, 1999.
Carol was at home the morning of November 30, 1999, getting ready to leave for work. Carol was on the phone with Wise from 7:45 a.m. to 8:46 a.m. Carol was fatally shot six times around 9:00 a.m. The penny charm that Carol wore — the bauble given her by boyfriend Wise — was ripped from her necklace.
Bozsik arrived at work that morning at 6:56 a.m. By 7:30 a.m. he left work for the 15 to 20 minute drive home, claiming he had to take out the garbage. Carol was talking on the phone with Wise from 7:45 a.m. to 8:46 a.m. Around 8:30 a.m., Carol told Wise that she saw appellant's car outside, but had not seen him in the house. At approximately 9:00 a.m., family acquaintance Anna Berry saw appellant driving eastbound about a half mile from his home. Appellant arrived back at work at 9:17 a.m. Carol never reported to work as scheduled at 10:00 a.m., though it was her practice to arrive approximately one hour before her shift began.
At 12:15 p.m., appellant disposed of a blue plastic bag at a dumpster at work. He was seen by a fellow employee, whereupon he flashed a look of rage and was very upset. Bozsik removed the blue plastic bag from the dumpster, and left the area. Authorities never recovered the murder weapon, a bloody rag that appellant said he used to wipe his bloody hands after he discovered Carol, and missing bed sheets that appellant said were removed because of menstrual blood left after intercourse.[2]
At 3:03 p.m., having returned home from work, Bozsik called 911 to report Carol's murder. Medina County Sheriff's deputies quickly arrived and secured the crime scene. EMS workers determined that Carol had been dead for hours. Carol's purse was not disturbed, and the Bozsik residence was otherwise intact.
A gunshot residue ("GSR") test was administered on the hands of appellant. Appellant's jacket was seized for testing. Appellant was interviewed by detectives. Lieutenant John Detchon was quietly observing appellant as the crime scene was processed. Appellant said "You think I did this, don't you?" Lt. Detchon replied "Well, I'm not sure that you didn't." Appellant acted upset and was wringing his hands when he observed that Lt. Detchon was watching him.
The night of Carol's murder, appellant went to her father's house, where family members were grieving. When Darrell Burkhart, Carol's brother, arrived, appellant embraced him and said that he was so sorry.
Later in the evening, the conversation turned to GSR. Darrell Burkhart said "The son of a bitch who did this to my little sister is still going to have the gun powder on his hands. I've been shooting guns for a long time. If he touched the steering wheel, touched the door handle, whatever he touched, it's going to be on there." With that, appellant looked down at his fingers and asked "Can't you wash it off?" Darrell replied "No."
The funeral for Carol was held on December 3, 1999. As appellant viewed Carol's body in the open casket, appellant was heard by Darrell Burkhart to say "Oh, my God, what have I done to you?" After appellant's inculpatory statement, Burkhart told his father "Dad, I think we're sleeping with the enemy." Appellant and the two Bozsik children were staying with Carol's father after the slaying.
The GSR test came back positive on appellant's left hand. Appellant's jacket tested positive for lead particles on the right side and right sleeve, consistent with the firing of a gun.
Ballistics experts with the ATF and BCI determined that the six bullets used in Carol's murder were .38 caliber, and that the handgun used was either a .38 caliber or .357 caliber firearm. Authorities learned that appellant had possessed a .38 caliber handgun in the past. Appellant told Burkhart in February of 1999 that he carried a handgun to and from work because of crime. Authorities found two .357 caliber bullets in a filing cabinet in the Bozsik's living room. On November 30, 1999, the day Carol was killed, a responding paramedic asked Bozsik whether there were any guns in the house. Appellant replied "No, all I have is a rifle and a shotgun." The paramedic thought the answer strange, for Bozsik was asked about guns generally, not about a handgun. During a telephone conversation with neighbor Cathy Singleton on December 6, 1999, appellant told her he owned three guns, but that he could not find the third gun. When he was arrested, appellant told authorities that he never owned a handgun.
At trial, appellant pointed the finger at Carol's boyfriend, Richard Wise, as the culprit. Wise had no discernable motive to kill Carol, his girlfriend. The morning Carol was killed, she was talking to Wise from 7:45 a.m. to 8:46 a.m. During that conversation Carol told Wise that she saw appellant's car outside, but had not seen him in the house. Carol told Wise to come look for her if she did not show up for work. Carol also expressed trepidation to Wise about whether she should be concerned about appellant seeking a higher life insurance policy for her that made appellant the beneficiary. Later, Wise would call Bozsik's home ten times starting at 11:25 a.m. looking for Carol. On December 1, 1999, detectives intercepted Wise as he came into the restaurant where Carol worked. Wise consented to have his pick up truck searched. Detectives found a card from Carol to Wise signed "I love you, Carol." Wise consented to an interview that went an hour and a half long. It was at the start of the interview that Wise first learned that Carol was dead, whereupon he cried. Wise turned over a firearm to authorities, which was tested and determined not to be the murder weapon. At the interview, Wise disclosed that he had never been to the Bozsik residence, and actually did not know exactly where Carol lived. Wise explained that after he went to lunch, he then went driving around Wadsworth looking for Carol's car.
It is well settled that it is left to the trier of fact to resolve the weight and credibility of the evidence. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The jury saw both Wise and Bozsik testify. As can be surmised from appellant's convictions, the jury found that the weight and the credibility of the evidence demonstrated Bozsik's guilt. That the defense could conceive of another perpetrator, and advance such a theory at trial, did not compel the trier of fact, the jury, to abdicate its truth finding function and automatically acquit Bozsik. See Id. Bozsik's claims regarding Wise do not demonstrate that the jury clearly lost its way. See Otten, supra.
Ultimately, this case tells an old story: jealousy and greed culminating in murder. Based upon a thorough review of the record, this Court concludes that appellant's convictions for aggravated murder and murder were supported by the manifest weight of the evidence. Accordingly, Bozsik's first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE DEFENDANT-APPELLANT'S CONVICTIONS ARE IN ERROR AS THE JURY RENDERED VERDICTS ON BOTH AGGRAVATED MURDER AND MURDER CONTRARY TO THE INSTRUCTIONS GIVEN BY THE COURT.
In his second assignment of error, Bozsik claims that he was prejudiced by juror misconduct when the jury found him guilty of aggravated murder and murder. Specifically, the jury was instructed by the trial court to not proceed to the consideration of the charge of murder until acquitting or deadlocking on the charge of aggravated murder.
The jury returned a verdict of guilty on the charges of aggravated murder and murder. Bozsik argues this was juror misconduct because the jury was charged to consider murder only after deadlocking or deciding to acquit on the aggravated murder charge. However, after the verdicts were pronounced, Bozsik failed to object to any alleged juror misconduct. Accordingly, the claim of error is deemed waived. See State v. Williams
(1977), 51 Ohio St.2d 112, paragraph one of the syllabus.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON A LESSER INCLUDED OFFENSE OF VOLUNTARY MANSLAUGHTER.
In his third assignment of error, Bozsik claims that he was prejudiced by the omission of an instruction for voluntary manslaughter. However, Bozsik failed to request any such instruction. "The failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Underwoood (1983), 3 Ohio St.3d 12, at syllabus. See, also, Crim.R. 30(A) ("On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict[.]"). Therefore, Bozsik has waived this claim of error.
Regardless of the waiver, the claim is meritless. The theory of the defense case was actual innocence. Generally, the advancement of a complete defense precludes the trial court from charging on a lesser included offense. State v. Nolton (1969), 19 Ohio St.2d 133, 135. See, also, State v. Wilkins (1980), 64 Ohio St.2d 382, 387-388. Moreover, the record was bereft of any evidence of sufficient provocation to necessitate a voluntary manslaughter instruction. See State v. Huertas
(1990), 51 Ohio St.3d 22, 31. Accordingly, an instruction for voluntary manslaughter was not appropriate in the instant case.
Bozsik's third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN THE ADMISSION OF IMPROPER EVIDENCE.
In his fourth assignment of error, Bozsik argues that two categories of evidence caused him prejudice: (1) testimony by Cheryl Gearhart, the wife of Bozsik's insurance agent, relating her fear of Bozsik; and (2) expert testimony regarding the "Bashinski test" and the presence of lead particles on Bozsik's jacket. This Court disagrees.
A trial court enjoys broad discretion in the admission or exclusion of evidence and will not be reversed absent a clear abuse which had materially prejudiced a defendant. State v. Hymore (1967),9 Ohio St.2d 122, 128, certiorari denied (1968), 390 U.S. 1024. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Statev. Bresson (1990), 51 Ohio St.3d 123, 129.
 Cheryl Gearhart Cheryl Gearhart was the wife of Bozsik's insurance agent Bill Gearhart, and an acquaintance through their daughters' youth soccer team. Cheryl was aware that Carol Bozsik was murdered on November 30, 1999. The morning of December 6, 1999, Bozsik called the Gearhart home and asked Cheryl about the status of his policy. Cheryl summoned her husband to the phone. Bill told Bozsik that the policy was ineffective because Carol had not signed the final paperwork. That morning, Cheryl decided to move the family from their house. At trial, Cheryl explained her rationale for moving to her in-laws house:
 I felt that — the person — if Steve had done this, that he was not thinking rationally, and my husband had just told him that he was not going to receive a two hundred twenty-five thousand dollars life insurance policy.
 And I thought he might be angry at my husband because he wasn't going to receive the money, and I — * * * And we were just afraid that something might happen to our family.
Appellant claims the foregoing testimony caused him substantial prejudice. Assuming without deciding that this testimony should not have been admitted, such error, if any, was harmless. Pursuant to Crim.R. 52(A), "any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Accordingly, "where constitutional error in the admission of evidence is extant, such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." State v.Williams (1983), 6 Ohio St.3d 281, paragraph six of the syllabus.
The state presented a myriad of evidence against Bozsik over the course of a three-week long trial that included over twenty-three hundred pages of testimony and over one hundred seventy exhibits. Even excluding Cheryl's statements, the evidence would be sufficient to sustain Bozsik's convictions. Therefore, any error that occurred in the improper admission of the statements was harmless.
 B. The Bashinski Test
Curtis Lee Jones was a trace evidence examiner for the Cuyahoga County Coroner's Office. Jones was trained to perform the Bashinski test, which determines whether articles of clothing have traces of lead particles as indicative, but not conclusive, of having fired a gun. Jones performed the Bashinski test upon the jacket of appellant, and found lead particles on the right sleeve and the right side of the jacket.
Appellant objected to the testimony regarding the Bashinski test under Evid.R. 403(A), that its probative value was substantially outweighed by the danger of unfair prejudice. This Court discerns no unfair prejudice in the state's proffering of scientific evidence that tends to demonstrate that appellant fired a gun the day Carol Bozsik was shot and killed.
Though the basis of appellant's objection below was Evid.R. 403, appellant now claims for the first time on appeal that the Bashinski test testimony was offered with inadequate foundation under Evid.R. 702. Jones did offer testimony regarding the scientific underpinnings of the Bashinski test, how it worked, and how he applied the science to the article of clothing he tested. However, Bozsik failed to make a foundation objection when Jones began offering his opinion regarding the results and import of the Bashinski test. Accordingly, the claim is waived on appeal. See Williams, supra, at paragraph one of the syllabus.
Bozsik's fourth assignment of error is overruled.
 FIFTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION TO COMPEL DISCOVERY WITH REGARD TO INFORMATION OBTAINED IN INVESTIGATING A SUSPECT OTHER THAN DEFENDANT-APPELLANT IN THE MURDER.
In his fifth assignment of error, Bozsik claims that he was prejudiced when the trial court denied his motion to compel discovery regarding the Medina County Sheriff's Department investigation of Richard Wise as a witness or possible suspect. This Court disagrees.
Crim R. 16(B)(1)(f) provides, in relevant part:
 Disclosure of evidence favorable to defendant. Upon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment.
The granting or denial of motions to compel discovery are reviewed under an abuse of discretion standard. State ex rel. V Cos. v. Marshall
(1998), 81 Ohio St.3d 467, 469.
In the instant case, appellant requested all information the state had gathered concerning Richard Wise, the decedent's acquaintance. While appellant claims "there was more than mere possibility and speculation into Richard Wise's involvement in the murder of Carol Bozsik," the record reveals just the opposite. Wise had a burgeoning relationship with Carol. Wise was on the phone with Carol from 7:46 a.m. to 8:45 a.m., just before she was murdered. During the call Carol told Wise that she saw appellant's car, but had not seen appellant in the house. In short, there was no motive or opportunity for Wise to have committed the murder.
It is well settled that generalized information regarding potential suspects is not subject to discovery under Crim.R. 16. State v. Willey
(1981), 5 Ohio App.3d 86, 91. Only when evidence regarding suspects rises to a level of materiality with actual evidence pointing toward the guilt of another party is such evidence discoverable. State v. Caldwell (Dec. 4, 1991), Summit App. No. 14720, unreported. This Court concludes that appellant has failed to demonstrate this threshold of materiality contemplated in Crim.R. 16. Moreover, appellant had the full and fair opportunity to subject the investigators and Wise to the great engine of truth — cross examination — in furtherance of a defense theory that Wise may have been the killer. Where the allegedly exculpatory evidence is presented at trial there can be no discovery violation. State v. Wickline (1990), 50 Ohio St.3d 114, 116-117, citingUnited States v. Agurs (1976), 427 U.S. 97, 103. For the foregoing reasons, Bozsik's fifth assignment of error is overruled.
 SIXTH ASSIGNMENT OF ERROR TRIAL COUNSEL WAS INEFFECTIVE IN THEIR REPRESENTATION OF THE DEFENDANT-APPELLANT.
Bozsik claims that he was prejudiced by the ineffective assistance of counsel. Specifically, Bozsik claims counsel: (1) failed to move for acquittal pursuant to Crim.R. 29 at the close of the state's case and at the close of the all the evidence; (2) failed to object to juror misconduct when the jury returned a conviction for both aggravated murder and murder, though the trial court instructed them to consider the charge of murder after they decided to acquit or were deadlocked; and (3) failed to request an instruction on the offense of voluntary manslaughter.
In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance fell below an objective standard of reasonable representation, and that this deficient performance resulted in prejudice to the appellant. Strickland v.Washington (1984), 466 U.S. 668, 687-688. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. at 689, quoting Michelv. Louisiana (1955), 350 U.S. 91, 101. Furthermore, an attorney properly licensed in Ohio is presumed competent. State v. Lott (1990),51 Ohio St.3d 160, 174.
This Court addressed the merits of the manifest weight of the evidence claim, and found Bozsik's claims to be without merit. "[A] finding that a conviction is supported by the manifest weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v. Elkins (Oct. 20, 1999), Summit App. No. 19307, unreported. This Court also addressed the impropriety of a voluntary manslaughter instruction in this case considering the theory of the defense and the state of the record. Bozsik has failed on these two grounds to demonstrate error, much less prejudicial error, and, therefore, has failed to satisfy the Strickland
test. See, e.g., State v. Mathes (June 13, 2001), Summit App. No. 20225, unreported.
Lastly, considering Bozsik's convictions for aggravated murder and murder were merged at sentencing, the absence of an objection from counsel about the manner in which jurors deliberated the charges presented to them does not demonstrate prejudicial error. Strickland,supra.
Bozsik has failed to demonstrate that his counsel was constitutionally deficient. Therefore, the sixth assignment of error is overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
BATCHELDER, P.J., WHITMORE, J. CONCUR.
[1] It is a familiar maxim of law that circumstantial and direct evidence inherently possess the same probative value. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph one of the syllabus.
[2] The Coroner concluded that Carol was not menstruating, and was negative for any semen.