The State of Ohio, Appellee, *v.* Osborne, Appellant.

[Cite as State v. Osborne (1976), 49 Ohio St. 2d 135.]

(No. 76-791—Decided December 30, 1976.)

136

*Mr. George C. Smith,* prosecuting attorney, and *Mr. Ronald J. O'Brien,* for appellee.

*Messrs. Hunter, Hollenbaugh, Theodotou & Kunkler, Mr. James K. Hunter, III, Messrs. Ahern & Ehrie* and *Mr. Dennis B. Ehrie, Jr.,* for appellant.

*Per Curiam.* Appellant Osborne asserts nine propositions of law.

In her first proposition, appellant claims that numerous errors occurred which, considered together, denied her due process of law and the right to a fair and impartial trial. One such error concerns the fact that the summons for special veniremen contained her name on its face; that, after the first summons was exhausted, the second summons also had her name on its face with the effect heretofore stated; that Crim. R. 24(F), which refers to the selection and seating of alternate jurors, was not strictly followed; and that extensive publicity both pretrial and throughout the trial was damaging and prejudicial. Appellant asserts that the trial court abused its discretion and thus committed prejudicial error in not granting a change of venue, a continuance of the trial, or the sequestration of the jury.

The fact pattern of this murder undeniably attracted public attention and was given a greater amount of coverage than the average case. However, in spite of the pretrial publicity, the record indicates that an impartial jury was obtained. The news coverage was not so spectacular or extensive that appellant could not select a jury uninfluenced thereby nor receive a fair trial. See *Sheppard* v. *Maxwell* (1966), 384 U. S. 333; *Estes* v. *Texas* (1965), 381 U. S. 532; *Rideau* v. *Louisiana* (1963), 373 U. S. 723; and *Irvin* v. *Dowd* (1961), 366 U. S. 717.

It is evident from the record that counsel both for the defendant and the prosecution and the trial court all sought with equal diligence to select and to impanel an unbiased jury. The *voir dire* lasted four days. A large number of prospective jurors were rejected or disqualified, and thus an additional special venire had to be drawn to obtain an impartial jury.

Appellant quotes, in her brief, excerpts from the ques-

tioning of over a dozen prospective jurors. Presumably the remarks chosen for quotation demonstrate to appellant's best advantage that many of the panel members were aware of pretrial publicity. However, of those quoted, only six actually served as jurors. We have examined the responses of each of these and find that none had formed a preconceived opinion as to defendant's guilt, and that all had evinced a willingness and ability to judge the accused and base his verdict solely on the evidence. There is nothing in the record to support a contrary claim.

Appellant's complaint that the subpoenas served upon prospective jurors contained her name or the style of the case argues, as we have noticed, that if a jury panelist is given in this manner the name of the case on which he may serve, then he will become more likely to read everything that pertains to "his" case, and thus a biased jury will result. As previously stated, the record discloses that this position is untenable. Responses to extensive *voir dire* demonstrate that jurors uninfluenced by the publicity were found in sufficient numbers.

Appellant argues that a mistrial should have been declared when the original venire was exhausted. Upon review of the procedure, we find that it was in conformity with R. C. 2945.18 and 2945.19 which provide that between 50 and 75 jurors are to be called for a venire. If it is anticipated that such a number will not be sufficient, a larger number is still not permitted to be drawn. If that number is exhausted, the drawing of additional jurors as a special venire is authorized. Appellant at trial did not object to this procedure nor move for a mistrial. We find the trial court did not commit error on this issue, and additionally, that the claim of error not being asserted at trial was surely waived.

Appellant claims that the dictates of Crim. R. 24(F)*

*Crim. R. 24(F) reads as follows:

"The court may direct that not more than six jurors in addition to the regular jury be called and impanelled to sit as alternate jurors. Alternate jurors in the order in which they are called shall replace

were not strictly followed in the seating of alternate jurors.

The rule is directory in nature, rather than mandatory. No prejudicial error was shown to result from seating the alternate jurors other than in the specific order in which they were called. All such alternates were qualified to be jurors. By passing the alternate for cause and exercising no peremptory challenge against her, appellant implicitly indicated her satisfaction with the alternate juror.

In sum, appellant has demonstrated no real prejudice from any alleged errors of the trial court. Unless prejudice to the defendant is shown, we will not reverse a judgment because of minor and technical defects in jury-selection procedures. *State* v. *Strodes* (1976), 48 Ohio St. 2d 113, 116.

The trial court under this record did not abuse its discretion in denying the motion for change of venue. The record discloses that appellant did not request the trial court to continue the case due to alleged pretrial publicity, and thus the asserted claim of prejudice for a denial of a continuance not demonstrated by the record is overruled as not based upon a timely motion.

Appellant's final complaint in her first proposition of law is that the court did not sequester the jury during the trial. The matter of sequestering the jury is within the sound discretion of the trial court, and we find no abuse

---

jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties. Alternate jurors shall be drawn in the same manner, have the same qualifications, be subject to the same examination and challenges, take the same oath, and have the same functions, powers, facilities, and privileges as the regular jurors. An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict. Each party is entitled to one peremptory challenge in addition to those otherwise allowed if one or two alternate jurors are to be impanelled, two peremptory challenges if three or four alternate jurors are to be impanelled, and three peremptory challenges if five or six alternate jurors are to be impanelled. The additional peremptory challenges may be used against an alternate juror only, and the other peremptory challenges allowed by this rule may not be used against an alternate juror."

of this discretion. The trial court took a great deal of care in, and gave considerable attention to, the usual admonitions with advise to the jury in detail of their responsibility to avoid external influence. The jury was sequestered as required by R. C. 2945.33 after the case was submitted for decision.

Accordingly, for the foregoing reasons, all of the errors asserted in appellant's first proposition of law are overruled, and we find that the process was due and that the trial was fair.

Appellant asserts, in her second proposition of law, that where, as here, a trial court has undertaken, for an experimental period, to record the trial proceedings by electronic means, and such means fail to accurately record the proceedings in total detail, a new trial must be ordered as the accused was denied due process and equal protection of the law.

Parts of the taped record indeed appear to be of poor technical quality due to either the equipment or its operator.

While appellant asserts that the "record is of such poor quality as to prohibit a complete review," she has failed to point out to us a specific instance where review is thereby effectively inhibited or precluded. Appellant did not seek to modify or correct the record, as might have been done under App. R. 9(E), by submitting to the trial court any additions or modifications that she believes would better preserve her arguments for review.

Any such claim as may have been caused by the defects in the record was waived by the failure of appellant to correct and supplement the record. Despite this waiver, we find that no actual prejudice resulted to appellant. She was clearly inculpated by the record which we must presume, in the absence of a contrary showing, to be substantially complete and correct. We cannot imagine what detail important enough to be exculpatory could be absent from the record without an immediate, or at least an early, outcry from appellant's counsel.

In her third proposition of law, appellant claims that her constitutional right to confront and cross-examine witnesses was violated when the trial court permitted the introduction of extrajudicial declarations of an alleged co-conspirator. Appellant argues that these statements were admitted before the state had established that a conspiracy existed.

Where the existence of a conspiracy has been established by other evidence, an extrajudicial statement of a co-conspirator, made in furtherance of the objectives of that conspiracy, is admissible as an exception to the hearsay rule. See *State* v. *Carver* (1972), 30 Ohio St. 2d 280.

The record shows this exception to be applicable here. Michael Goins was initially called by the state before Kay Osborne testified. Appellant objected to testimony by Goins as to the statements of Weind, the alleged co-conspirator, and those objections were properly sustained by the trial court because the prosecution had not yet established a *prima facie* case of conspiracy.

The state thereupon withdrew Goins from the witness stand and subsequently called Kay Osborne who testified that her mother "told me she had paid Carl and Jimmy to kill Mrs. Ross." Although that statement, standing alone, would be sufficient to establish the *prima facie* case of conspiracy necessary to make the extrajudicial statements by the co-conspirator admissible, there was other evidence giving double assurance of the existence of the conspiracy.

Goins, recalled, testified as to statements made to him by Weind prior to the homicide. These statements fall directly within the stated exception to the hearsay rule. The trial court properly ruled.

Goins further testified as to statements by Weind following the murder. Even if they were inadmissible, appellant failed to timely object which constitutes a waiver. See *State* v. *Gordon* (1971), 28 Ohio St. 2d 45.

Accordingly, appellant's third proposition of law is overruled.

Appellant's fourth proposition of law states that (a) the state failed to offer proof sufficient to support an essential averment of the indictment, and (b) that the jury verdict was not sustained by sufficient evidence or was contrary to law; therefore, appellant asserts, it was the duty of the trial court to sustain motions by appellant or to modify the jury.

Upon review of the entire record, we conclude that sufficient credible evidence upon all the essential elements of the crimes was adduced at trial.

Appellant asserts in her fifth proposition of law that where the same conduct by the accused in a criminal proceeding can be construed to constitute two or more allied offenses, the trial court must require an election as to which of the offenses is to be submitted to the jury for final determination.

We see no such requirement in R. C. 2941.25(A) which provides that a defendant may not be *convicted* on all counts of a multiple-count indictment. The basic thrust of this section is to prevent "shotgun" convictions. *Maumee* v. *Geiger* (1976), 45 Ohio St. 2d 238, 242.

Appellant contends, in her brief, that the trial court "bathed * * *[her] in a prohibitive sea of guilt that, by virtue of the oppressive number of verdict forms, flowed into the jury room and poisoned the minds of the jurors."

The prosecution in this instance was justified in submitting both premeditated murder and felony murder counts to the jury. The statute prohibits a conviction of both, not the submission to the jury of both. See *Maumee* v. *Geiger, supra.*

Although the jury did find appellant guilty on both counts, the trial court set aside one of the aggravated murder counts and sentenced appellant on only the one count, thus complying with R. C. 2941.25(A).

Since the jury found appellant guilty on both counts, the requirement of an election would have still resulted in appellant's conviction. This proposition of law is overruled.

Appellant in her sixth proposition argues that the trial court improperly charged the jury in that it failed to charge on lesser-included offenses, used language from a repealed code section, and permitted uncontrolled questioning by the jury.

The record reflects that appellant's counsel did not object to the jury charge. Thus, this proposition of law could be properly overruled purely on the basis of Crim. R. 30 which provided at the time of the trial herein:

"* * * No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

Nor upon review of the charge, do we find that it contained error.

Appellant asserts in her seventh proposition of law that the jury verdict either was against the manifest weight of the evidence presented or was contrary to applicable state law and thus cannot be permitted to stand.

This is substantially the same contention raised by appellant in her fourth proposition of law, part (b). For the reasons there cited, this proposition of law is overruled. There was sufficient credible evidence to sustain the jury verdict.

In proposition of law number eight, appellant contends that R. C. 2903.01, 2929.02, 2929.03 and 2929.04 permit the rare, random and arbitrary imposition of the punishment of death in violation of the Eighth and Fourteenth Amendments to the United States Constitution. This issue was decided by this court in *State* v. *Bayless* (1976), 48 Ohio St. 2d 73, and need not be reconsidered here. This proposition of law is overruled.

In her ninth proposition of law, appellant asserts that R. C. 2929.03 and 2929.04 are unconstitutional (1) in that the statutes do not require the Supreme Court to com-

pare the sentences imposed upon similarly situated defendants; (2) in that the statutes do not require the sentencing authority to focus its attention on the defendant's individual characteristics, and the circumstances surrounding the act itself; and (3) in that the statutes do not require review or direct review by the Supreme Court.

As to the first assertion of this proposition, the constitutionality of Ohio's general scheme was upheld in *Bayless, supra,* and need not be repeated at length here. The Ohio statutes require the death sentence to be imposed upon all defendants convicted of aggravated murder coupled with at least one of seven aggravating circumstances, provided that none of the three mitigating factors exists. All similarly situated defendants are thus sentenced alike.

We find the second assertion that claims Ohio's mitigating circumstances are unconstitutionally narrow also without merit. R. C. 2929.04(B) states:

"Regardless of whether one or more of the aggravating circumstances listed in division (A) of this section is specified in the indictment and proved beyond a reasonable doubt, the death penalty for aggravated murder is precluded when, *considering the nature and circumstances of the offense and the history, character, and condition of the offender,* one or more of the * * * [three statutory mitigating circumstances] is established by a * * * [preponderance] of the evidence." (Emphasis added.)

Thus, the wording of the statute itself answers this argument of appellant. In *State* v. *Bell* (1976), 48 Ohio St. 2d 270, we held that the mitigating circumstances of R. C. 2929.04(B) were not to be construed narrowly and that relevant factors, such as prior criminal record and age of defendant, were to be considered by the sentencing authority.

Thus, in considering whether the crime was primarily the product of a "mental deficiency," under R. C. 2929.04 (B)(3), the trier of fact at the penalty proceedings may

consider any mental deficiency or incapacity in light of all the circumstances including the nature of the crime. See *State* v. *Black* (1976), 48 Ohio St. 2d 262. Similarly, in R. C. 2929.04(B)(2), the terms "duress" and "coercion" are to be construed more broadly than when used as a defense in criminal cases. See *State* v. *Woods* (1976), 48 Ohio St. 2d 127, 135. These constructions appropriately allow consideration of the broad range of information relevant to mitigation set out in R. C. 2929.04. Accordingly, we find this assertion by appellant to be without merit.

Appellant alleges further that Ohio's death penalty scheme does not require review or direct review by the state Supreme Court.

Although it is true that this court does not directly review cases from the Court of Common Pleas, we believe that the constitutionality of the scheme is not threatened by this procedure. Appellant seems to argue that since the state of Georgia has a provision for direct review of the trial court by its Supreme Court, and since the United States Supreme Court has upheld the Georgia law, then all states must have such a direct review to be constitutional. Such reasoning is clearly erroneous. The United States Supreme Court has never stated that the constitutionality of a state death penalty scheme hinges on whether it provides for direct review by the state Supreme Court.

Appellant's argument that the Ohio scheme does not require review is without merit. It is undeniably clear that all convicted defendants in criminal cases have access to the Court of Appeals. Section 2(B)(2)(a)(ii), Article IV of the Ohio Constitution states that this court shall have appellate jurisdiction in appeals from the Court of Appeals *as a matter of right* in cases in which the death penalty has been affirmed.

Thus, we find all three assertions of appellant's ninth and final proposition of law without merit, and so overrule it.

148

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'Neill, C. J., Herbert, Corrigan, Stern, Celebrezze, Stephenson and P. Brown, JJ., concur.

Stephenson, J., of the Fourth Appellate District, sitting for W. Brown, J.