This is an appeal from: 1) a March 2, 1998 judgment entry of the Sylvania Municipal Court in which the court found appellant, Janet M. Wiley, guilty of failure to keep reasonable control of her vehicle, a violation of R.C. 4511.202, and of driving under the influence of drugs of abuse, a violation of R.C. 4511.19(A)(1); and 2) a May 20, 1998 judgment entry of the Sylvania Municipal Court in which the court sentenced appellant. Appellant has presented six assignments of error for consideration on appeal that are:
 "I. The trial court improperly denied hearing on Appellant's motion to suppress the subsequent tests of Appellant's body fluids, for the Motion met the sufficiency requirements established in the Shindler
decision.
 "II. The trial court erred in denying Appellant's Motion to Suppress, since the arresting officer did not possess the requisite reasonable and articulable suspicion to stop, investigate and/or arrest Appellant for alleged criminal activity.
 "III. Appellant was denied effective assistance of counsel during these proceedings, in violation of her Sixth Amendment rights.
 "IV. It was prejudicial and ineffective to Appellant, and confusing for the trial court, to simultaneously conduct the suppression hearing and court trial.
 "V. The decisions of the lower court against Appellant were against the manifest weight of the evidence presented at trial and hearing pursuant to Ohio law and the U.S. Constitution, since sufficient proof of guilt for each essential element of the charged offense was not presented, nor proven.
 "VI. Appellant was prejudiced and harmed by the failure of the lower court to provide a full, comprehensive and accurate record of the proceedings in this matter for appellate review."
We will first consider the sixth assignment of error, since it concerns the status of the record. Appellant alleges that she is prejudiced by an inadequate transcript of the proceedings below. Appellant says:
 "After two court reporters attempted, and then determined they could not or would not transcribe the audio tapes provided them by the court, as well as numerous continuances and time extensions, Appellant was finally able to find a reporting service willing to attempt transcription. The result is a transcription full of gaps peppered with the following designation: (inaudible). Review of the transcripts reveals numerous areas where the tapes could not be transcribed and valuable, essential information and evidence was lost.
 "The rigors of Appellate Rule 9(C) requiring a written statement summarizing the lower Court proceedings, and of 9(E) to contact requiring cooperation of the parties and the lower court in correcting omissions or errors are obviously poor substitutes for the normal transcript or audio recording, and may be an unreasonable unattainable goal in this matter. Court reporters and/or recording devices are utilized by courts to make a reasonably indelible record of proceedings for possible future use when necessary; and it was assumed that such was occurring on December 10, 1997, January 7, 1998 and March 2, 1998 in this matter. As may be the situation in the Warrington case, this one, and potentially many others, The Sylvania Municipal Court does not promote recordation of their proceedings, possibly indicating disrespect or misplaced omnipotence toward this Court in doing so. Appellant should not be prejudiced or harmed by the choice of the lower court to minimize the importance of recording proceedings therein, and this case should be remanded back for further proceedings which are properly recorded for proper appropriate determination."
Appellee responds that the transcript is sufficiently complete. Appellee concedes there are some portions of the transcript marked "inaudible" but says the portions are not so great that the essence of the trial is lost. Appellee says appellant has not shown how she is prejudiced by the transcript she claims is deficient.
In 1976, the Supreme Court of Ohio considered arguments in a murder case that were similar to those raised by appellant.State v. Osborne (1976), 49 Ohio St.2d 135, 142. The Supreme Court said:
 "Parts of the taped record indeed appear to be of poor technical quality due to either the equipment or its operator.
 "While appellant asserts that the `record is of such poor quality as to prohibit a complete review,' she has failed to point to us a specific instance where review is thereby effectively inhibited or precluded. Appellant did not seek to modify or correct the record, as might have been done under App.R. 9(E), by submitting to the trial court any additions or modifications that she believes would better preserve her arguments for review.
 "Any such claim as may have been caused by the defects in the record was waived by the failure of appellant to correct and supplement the record." Id. at 142.
Applying this precedent to our case, we also find that appellant has not identified any specific instance where the inaudible portions of the transcript resulted in prejudice to her case. In addition, appellant did not attempt to use the procedures provided under App.R. 9 to add to or to modify the record, so her claims of prejudice caused by the defects in the transcript are waived. Appellant's sixth assignment of error is not well-taken.
In support of her first assignment of error, appellant argues that the trial court erred when it refused to hold a hearing on some portions of her motion to suppress. Appellant says she raised sufficient issues of fact and law to have her challenge of the testing done on her body fluids after her arrest considered at the hearing on her motion to suppress. She says she used the same form that was scrutinized and approved by the Supreme Court of Ohio in State v. Shindler (1994), 70 Ohio St.3d 54. She says the evidence showed she had opportunity to take more pills after she was released from the state patrol post, and she should have been allowed to show that could have affected the results of the tests on her body fluids. Finally, she says she should have been able to show that the tests were done more than two hours after her arrest, in violation of state rules and regulations.
Appellee responds that the trial court did not err when it struck some portions of appellant's motion to suppress. Appellee says the motion did not comply with the requirements of Crim.R. 47 because the allegations were not specific enough to alert appellee to the true nature of appellant's challenge to evidence, and appellant did not provide factual allegations to support appellant's assertion that some evidence should be suppressed. Finally, appellee says that any error that might have occurred when the trial court refused to have a hearing on some portions of appellant's motion to suppress is harmless, because even if the test were done more than two hours after her arrest, the results are admissible with expert testimony, and that testimony was provided at trial.
The record contains appellant's motion to suppress, filed in the trial court on November 17, 1997. In the motion, appellant asked the court to suppress: 1) tests of her sobriety or alcohol or drug level, including chemical tests; 2) statements taken from her; and 3) observations and opinions of the trooper who arrested her regarding her sobriety. The basis given by appellant in her motion to suppress was:
 "1. There was no lawful cause to stop the Defendant, detain the Defendant, and/or probable cause to arrest Defendant without a warrant.
 "2. The test or tests to determine the Defendant's alcohol and/or drug level were not taken voluntarily and were unconstitutionally coerced when obtained due to the threat of loss of license not sanctioned by the requirements of R.C. 4511.191.
 "3. The individual administering the Defendant's test of alcohol did not conduct the test in accordance with the time limitation and regulations of the State of Ohio in R.C. 4511.19(D) and the Ohio Department of Health governing such testing and/or analysis, as set forth in Chapter 3701-53-02 of the Ohio Administrative Code, including the operator's checklist instructions issued by the Ohio Department of Health included in the appendices to OAC 3701-53-02.
 "4. Statements from the Defendant were obtained in violation of his [sic] Fifth Amendment right against self-incrimination and of both his [sic] Fifth and Sixth Amendment right to counsel as applicable under Fourteenth Amendment."
In her memorandum in support of her motion, appellant said:
 "Evidence flowing from an illegal stop, detention and/or arrest cannot be used to convict the Defendant. State v. Chatton (1984), 11 Ohio St.3d 59, 463 N.E.2d 1237; State v Timson (1974), 38 Ohio St.2d 122, 311 N.E.2d 16; State v Walters (March 27, 1985), Hamilton App No. C-840413, unreported.
 "The provisions of R.C. 4511.191 are not applicable unless the Defendant was validly arrested by an officer having reasonable grounds to believe the Defendant was operating a vehicle while under the influence of alcohol and/or drugs of abuse and was properly advised of the Ohio Implied Consent Provisions. When implied consent warnings are misstatements of the law, consent in [sic] involuntary and such evidence is unconstitutionally obtained under the Fourth Amendment. Therefore the Defendant's alcohol test must be suppressed. State v. Taggart (August 29, 1987), Washington App. No. 86 CA 21, 1987 WL 15982, unreported.
 "The Defendant further contends that custodial statements taken from Defendant were obtained in violation of his [sic] constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States. Miranda v. Arizona (1966), 384 U.S. 436; Berkemer v. McMarty (1984), 468 U.S. 420, 104 S.Ct. 3138; State v. Buchholz (1984), 11 Ohio St.3d 24, 462 N.E.2d 1222."
On November 25, 1997, the state filed a motion to strike appellant's motion to suppress. The state argued the motion to suppress was not timely filed.
On December 10, 1997, the trial court held a hearing on the motion to strike appellant's motion to suppress. The trial court granted the motion to strike as it related to any testimony relating to the procedures used to test appellant's bodily fluids after she was admitted to a hospital for treatment following her arrest. The trial court said that appellant's motion to suppress "has some shotgun aspects to it as far as the blood draw is concerned * * *" and ruled that her motion was not "specific enough to warrant proceeding on that basis * * *."
On January 9, 1998, the trial court filed an opinion regarding its ruling to strike portions of appellant's motion to suppress. The court said, in pertinent part:
 "The Court will first address Defendant's claim that the individual conducting the test for alcohol did not conduct it in accordance within the requirements of R.C. 4511.19(D) or the Ohio Department of Health's regulations governing such testing. Defendant's assertions are vague and do not point to any specific instance of violation of any specific regulation. Defendant fails to consider that when making an application to the trial court for an order pursuant to Crim.R. 47 the moving party has an initial burden which must be satisfied before the state's burden of proof is involved. Xenia v. Wallace (1988), 37 Ohio St.3d 216; State v. Cherukuri (1992), 79 Ohio App.3d 228, 232."
The trial court stressed that a defendant must provide a factual basis for a motion to suppress, in the form of an affidavit or some other evidentiary materials. The court continued:
 "Defendant's motion to suppress filed in the instant case wholly fails in every regard. The motion only expresses in conclusional terms the grounds for the alleged violation, and does not state the factual basis supporting those grounds; nor is there attached to the motion a memorandum upon which such facts as specified in Crim.R. 47."
The trial court said appellant gave no specificity in her allegations to alert the state and the court to which nurse or staff personnel would be needed as witnesses to counter her allegations at a hearing on her motion to suppress.
The trial court then gave a second basis for excluding any testimony regarding the testing of appellant's blood. The court said: "Also, the late filing of the motion creates an unreasonable burden and violates the sense of justice to all parties herein." The court went on to explain:
 "The Defendant had over three months to file her motion and chose not to do so. This court finds that justice would not be served by requiring the Prosecution to locate and subpoena an unknown number of witnesses at the eleventh hour, on the eve of trial in order to rebut general assertions of violations of blood alcohol testing procedures."
After noting that the motion was not filed within the time limits established by the provisions of Crim.R. 12(C), the court said:
 "In conclusion, this Court finds that Defendant did not give specific allegations as to the violations of the alcohol test as required by Xenia and that the Motion to Suppress was filed untimely. Therefore, based upon the forgoing, Defendant's Motion to Suppress is Denied as to all issues attacking the blood test result."
Appellant is correct that the Supreme Court of Ohio reviewed a case involving a motion to suppress that quoted similar form language to that which appellant used in her motion to suppress in State v. Shindler (1994), 70 Ohio St.3d 54. The syllabus rule from that case reads:
 "In order to require a hearing on a motion to suppress evidence, the accused must state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided. (Crim.R. 47 and Xenia v. Wallace [1988], 37 Ohio St.3d 216, 524 N.E.2d 889, construed and followed.)" Id. at the syllabus.
A review of the opinion accompanying the ruling shows that in that case, the defendant who used the form language also filed a memorandum in support of the motion that "stated with particularity the statutes, regulations and constitutional amendments she alleged were violated, set forth some underlying factual basis to warrant a hearing, and gave the prosecutor and court sufficient notice of the basis of her challenge." Id. at 58.
In contrast, when we review the motion and the memorandum in support filed by appellant in this case, we agree with the trial court and appellee that appellant failed to give sufficient factual allegations to alert the state and the trial court to the nature of appellant's challenge of the tests done on her body fluids. The Supreme Court's holding in State v.Shindler, 70 Ohio St.3d 54, does not establish blanket approval of any motion that uses the form language used by the appellant in that case. See e.g. State v. Borgerding (1997), 119 Ohio App.3d 632,636, 637; State v. Neuhoff (1997), 119 Ohio App.3d 501,507. Instead, the ruling stands for the proposition that a motion using the form language that is accompanied by a memorandum containing factual information to support the allegations is sufficient to require a trial court to hold a hearing on the issues raised.
Furthermore, even assuming arguendo that the motion and memorandum filed by appellant did contain sufficient facts and legal reasons to require the trial court to hold a hearing on her motion to suppress test results of her body fluids, appellant has not challenged a second, distinct basis relied upon by the trial court to support its ruling. Appellant has not argued that the trial court erred when it ruled her motion to suppress was filed out of time. Therefore, the ruling of the trial court stands. Appellant's first assignment of error is not well-taken.
In support of her second assignment of error, appellant argues that her motion to suppress should have been granted because the trooper who arrested her did not have any reasonable, articulable suspicion that she was or was about to be engaged in criminal activity when he stopped and subsequently arrested her. Appellant says when the trooper arrived, he only had reason to believe she had been "the victim of some kind of accident", yet the trooper asked her very specific questions about her drug prescriptions and about how much of the drugs she had taken within the last few hours before he came upon her. She says that medical personnel called to the scene did not take her to the hospital because they found her to be lucid. She says that when the totality of the circumstances are considered, it is clear that the trooper did not have any reasonable articulable suspicion to support his stop and arrest of her.
Appellee responds that the trooper did have reasonable, articulable suspicion that appellant was or was about to be engaged in criminal behavior at the time of the stop. In addition appellee says the trooper had probable cause to arrest appellant.
The record contains testimony given by the trooper at a hearing that was for the joint purpose of considering the motion to suppress issues and opening the trial to the bench. The trooper testified that on June 24, 1997 he was on duty when he began hearing reports on the scanner in his cruiser that a vehicle was "driving all over the road" on northbound Interstate 475. He was near the area described in the reports, so he drove toward that area. While on his way, he began to try to reach the state patrol or individuals on channel nine of citizen's band (CB) radio. He heard CB broadcasts made by truck drivers who were at the scene. The truck drivers described a small, red car and gave a license plate number. They reported the driver in the car was "driving wildly" and that one truck was almost run off the road.
The trooper talked with one trucker on the CB. The trucker told the trooper he was stopped on the side of the highway, and that the little red car was in the median. He told the trooper he saw the car hit a concrete wall on Interstate 475. The truck driver gave his name, and waited at the scene.
The trooper testified that when he arrived at the scene, he first saw the truck stopped on the side of the highway. He then found appellant in the driver's seat of the small red car. The car was in the median, with all of its light turned off. The trooper did periodically see the brake lights flash. He said the car was still moving, albeit at a very slow speed. Smoke was coming out from underneath the car.
The trooper approached the car, and asked appellant to turn off the car. She did as she was asked. The trooper noticed the two front tires were flat, and that the rubber was actually missing from one of the tires. He asked appellant to get out of the car, explaining that he could tell she had been in a "crash". He noticed "halts in movement and also in her responses." He began to ask her where she was coming from, if she was familiar with the area and where she was going. She answered that she was coming from Perrysburg, Ohio and had been traveling on Route 795. She did not know where she was when she was stopped.
The trooper said that he believed appellant was about to pass out. She could not stand or sit still, and could not keep her balance. She was lethargic and had slurred speech. Because he could not smell alcohol, he asked her if she was on medication. She said yes.
The officer found a bottle with pills in appellant's purse. From the label on the bottle, he learned her prescription had been filled earlier that day, he also learned the number of pills she had been given. He opened the bottle and counted the pills that remained. Ten pills were missing, even though the dose listed on the bottle was one pill. When he asked appellant where the missing pills were, she said she must have left them at home.
The trooper said appellant could not perform the "walk and turn" sobriety test: she fell over. He called for medical assistance. When the paramedics arrived, they spoke with appellant and then told the trooper that she was able to respond to their questions, and they could not take her to the hospital against her will. The trooper then gave appellant Miranda
warnings and took her to the state patrol post.
At the state patrol post, the trooper cited appellant for the three offenses which were previously cited in the facts. He called appellant's son, who came to the post to take appellant home.
The trooper testified that appellant's son drove away from the post with appellant, and returned a few minutes later. The trooper said appellant's son ran into the state patrol post in an agitated state and said appellant had tried to take more pills as they drove away. The trooper testified appellant's son told the trooper he took the open bottle of pills from his mother and threw them out the window so she could not take any more. He then returned to the state patrol post seeking help.
The trooper called a hospital and based upon the advice he received, he called for a medical squad to come to the post. Appellant was taken from the post to a hospital where she was admitted for treatment. The trooper followed, and made a formal request to the hospital for reports on what drugs appellant had in her system.
As this court has previously noted, when this court reviews a trial court's ruling on a motion to suppress, this court:
 "must keep in mind that weighing the evidence and determining the credibility of witnesses are functions of the trier of fact. * * * Where there is substantial evidence to support the factual findings of the trial court, its ruling will not be disturbed on appeal absent an error of law." State v. Lopez (Dec. 3, 1993), Lucas App. No. L-92-422, unreported (citations omitted).
Keeping this standard of review in mind, we have carefully considered the record and the arguments in this case.
The Fourth Amendment to the United States Constitution does protect an individual from unreasonable search and seizures, including some investigatory stops by police officers. Terry v.Ohio (1968), 392 U.S. 1, 19; State v. Andrews (1991), 57 Ohio St.3d 86,87. However, a police officer may make an investigatory stop if the "officer's action was justified at its inception, and * * * it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry v. Ohio,392 U.S. at 19-20. Ohio courts have applied this rule to stops made by a police officer when the officer learns of unusual behavior or circumstances and acts out of concern for the safety of the individuals concerned and for the safety of society at large. Bucyrus v. Lewis (1990), 66 Ohio App.3d 256, 258-259,583 N.E.2d 1114. In this case, the trooper observed several unusual circumstances (two flat tires, the rubber missing from one tire, smoke coming from under the vehicle, slow rate of speed, no lights (other than occasional flashes of brake lights) scrapes and dents in the body of the vehicle, appellant driving her heavily damaged vehicle in the median of the highway) that justified him stopping appellant to see if she was alright and to ensure the safety of the other members of the public who were driving on the highway.
In addition, even without considering the CB reports the trooper heard prior to arriving at the scene, the unusual circumstances we just noted the trooper personally saw when he arrived at the scene formed a basis for him to reasonably suspect that appellant violated traffic rules by failing to maintain reasonable control of her vehicle. Accordingly, the initial stop of appellant by the trooper did not violate appellant's constitutional protections against unreasonable search and seizure. See State v. Wireman (1993), 86 Ohio App.3d 451, 453.
Finally, we agree with the trial court and with appellee that the trooper did have probable cause to place appellant under arrest. After he stopped appellant to learn if she was well, he noticed she was not responding normally. He suspected some form of inebriation, but since he could not smell alcohol, he reasonably asked her if she had taken any medication. Appellant's slow responses and lack of balance, inability to remain still, slurred speech and lethargy supported the trooper's further investigation to learn why appellant was driving a damaged car in the median of the highway. The information he learned from her answers and from his own investigation (i.e. that ten pills were missing from a just filled prescription that listed one pill as the appropriate dose) appellant's strange behavior, appellant's damaged car and the location of her car when he found her formed probable cause for the officer to arrest appellant for driving under the influence of drugs of abuse and for failure to maintain reasonable control of a vehicle. Appellant's second assignment of error is not well-taken.
We next consider appellant's third assignment of error in which she contends she received ineffective assistance of counsel. First, she says she got ineffective assistance of counsel because her attorney did not make any "appealable challenges" to "alleged speedy trial waivers of Appellant". She says the trial court acted unreasonably when it charged all time to her on the basis that she was the one demanding a trial. She argues her trial counsel should have objected to the trial court's decisions taxing all the time to her when many of the delays were sought by the state because its witnesses were not available on the scheduled trial date. She does not, however, do any computation to show how the time should have been counted, or that her trial was held in violation of her right to a speedy trial.
Second, she says her trial attorney was ineffective because he conducted a worthless cross-examination of the toxicologist called by the state. She complains that her counsel did not ask the toxicologist what effect it would have if she had taken more pills when she was in the car with her son. She also says her counsel should have asked about the effect her sleep apnea condition and bad knee would have on her behavior.
Third, she says her counsel was ineffective because he did not object to the trial court holding the motion to suppress hearing and the trial simultaneously. She says there was a "potential conflict" and that the procedure used amounted to plain error.
Appellee responds by citing the standards used in Ohio to determine whether or not a defendant got ineffective assistance of counsel. Appellee does not make any specific reply to the arguments raised by appellant. Instead, appellee says: "Based upon the above-cited authorities and an examination of the record, it cannot be said that trial counsel was ineffective. As such, the Third Assignment of Error of the Defendant-Appellant is without merit and should be overruled."
The Supreme Court of Ohio has ruled:
 "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Strickland v. Washington [1984], 466 U.S. 668, followed.)" State v. Bradley (1989), 42 Ohio St.3d 136, 137, paragraph two of the syllabus.
Because the Supreme Court of Ohio has specifically followed the ruling of the United States Supreme Court in Strickland v.Washington (1984), 466 U.S. 668, we are also guided by the reasoning discussed in that case. In Strickland v. Washington the United States Supreme Court indicated that when a court reviews counsel's performance "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. In addition, due deference must be given by the reviewing court to legitimate trial strategy decisions. Id. Finally, in Ohio, there is a presumption that licensed counsel is effective. State v.Jackson (1980), 64 Ohio St.2d 107, 110-111.
After applying these standards to this case, we conclude that the record does not show that appellant received ineffective assistance of counsel. First, we carefully considered whether appellant was denied a speedy trial (see appendix A). While we agree that appellant's trial counsel arguably fell below an objective standard of reasonable representation when he failed to file the required written motion and demand for trial to revoke the written, open-ended waiver of time signed by appellant early in the case, see State v. O'Brien
(1987), 34 Ohio St.3d 7, paragraph two of the syllabus, we do not agree that appellant was prejudiced by her counsel's mistake. As we show in appendix A, even if counsel had filed the required written revocation of the speedy trial time waiver, other exceptions applied to toll the time, and appellant's trial was started before speedy trial time requirements were violated.
Second, we do not agree with appellant's assessment that her trial attorney's cross-examination of the toxicologist fell below an objective standard of reasonable representation or that she was prejudiced by the cross-examination. Appellant complains that her attorney did not ask what effect it would have on her body fluid tests if she took more pills after she left the state patrol post. However, there was no testimony to show she did take any pills after she left police custody with her son.
Likewise, appellant's trial counsel had no basis to ask the toxicologist what effect appellant's bad knee would have on her ability to perform field sobriety tests. The toxicologist was testifying about the levels of chemicals found when appellant's body fluids were tested following her admission to the hospital, and about the way those kinds of chemical levels could affect a person's ability to concentrate and react when driving. Appellant's bad knee would have no effect on the chemical levels in her body fluids that formed the basis of the toxicologist's testimony.
Finally, appellant has not explained what "potential conflict" existed or how she was prejudiced when the trial court simultaneously held a hearing on her motion to suppress and the beginning of her trial. Appellant has not shown that she received ineffective assistance of counsel, so her third assignment of error is not well-taken.
In support of her fourth assignment of error, appellant again contends that she was prejudiced and prevented from having a fair trial when the trial court simultaneously held the hearing for her motion to suppress and started her trial. Appellant says: "It is an abuse of discretion to hold a trial and a motion hearing at the same time and consider the same piece of evidence for both or consider the same piece of evidence for one and not the other, this method is prejudicial and causes harm to the Appellant of depriving her of fair proceedings and fair determination of the issues at hand." Appellant cites no authority to support her position.
Appellee responds that appellant's counsel did not object to the procedure used by the trial court, so the issue is waived for appeal, unless it is plain error. Appellee says there is no plain error in this case because there is no proof that the outcome of the trial would be different if the hearing on the motion to suppress was conducted separately from the beginning of trial. Furthermore, appellee says the procedure used was "a judicially efficient and appropriate disposition of all matters relevant to the instant case."
We agree with appellee's assessment. As appellant herself points out, the trial court was careful to say when it was considering some information for the motion to suppress that it would not consider for purposes of trial. This shows that the trial court was mindful of the dual purposes of the testimony given by the trooper in the combined hearing on the motion to suppress and the beginning of trial. In addition, since this was a trial to the bench, there is a presumption that the trial court only considered evidence that was admissible at trial in reaching a decision on appellant's guilt. Mason v. Swartz (1991), 76 Ohio App.3d 43,55. Appellant has not pointed out, nor has this court found, any proof in the record to show that she was prejudiced in any way by the combined hearing on the motion to suppress and the beginning of her trial. Accordingly, appellant's fourth assignment of error is not well-taken.
In support of her fifth assignment of error, appellant argues that her conviction for driving under the influence of drugs of abuse was against the manifest weight of the evidence. She says there was no conclusive evidence that she was driving her car under the influence of drugs of abuse.
Appellee answers that a complete review of the record shows that the trial court did not lose its way when it ruled that appellant is guilty of driving under the influence of drugs of abuse. Appellee says the conviction of appellant is not against the manifest weight of the evidence.
The Supreme Court of Ohio has said:
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Blacks supra, at 1594.
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. * * *" State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
In addition to the testimony of the state trooper who arrested appellant, the trial court heard testimony from five witnesses; a semi-truck driver who witnessed appellant driving her car before the trooper arrived, and four employees from the MCO laboratory where tests were done on appellant's blood and urine samples after she was admitted to a hospital for treatment following her arrest.
The semi-truck driver testified that he first saw appellant's car between eleven o'clock and midnight on June 23, 1997. He was driving a semi-truck for his employer on Route 23 southbound, just before it merges in with Interstate 475. Traffic was moving very slowly, because appellant was driving so erratically no other driver dared to pass her.
The truck driver said appellant was driving her car without turning on its headlights or taillights. He said appellant's car veered off to the left of the roadway, and went into the median. She drove the car in the median for a short time and then drove back onto the highway. He testified that she drove into the median and back onto the highway a couple of times. Then, appellant drove across three lanes and hit a guardrail.
The truck driver testified that he used his CB to reach the state trooper who eventually arrived at the scene. He also used his CB to warn truck drivers behind him of the situation and to advise them to slow down.
The truck driver testified that he parked by the side of the highway after appellant struck the guardrail and became stuck in the median. He waited there until the state trooper arrived.
The employees from the lab at MCO testified regarding the tests they did on blood and urine samples taken from appellant when she was admitted to a hospital following her arrest. They testified that appellant's urine tested positive for THC, a metaboloid of marijuana. They also found Meperidine, Ambien and Paxil in her urine samples.
A forensic toxicologist from MCO testified about the effect the various drugs found in appellant's test results. His testimony showed that the level of Ambien would result in serious impairment of a person trying to do a multi-function task like driving. Likewise, marijuana can severely impair a person's ability to perform a multi-function task, but the toxicologist could not say whether appellant's ability to drive was impaired by the marijuana still in her system.
After considering all of the above testimony, this court cannot find that the trial court clearly lost its way when it found appellant guilty of driving under the influence of drugs of abuse. The testimony from the semi-truck driver shows appellant was driving in an abnormal manner. The testimony from the trooper shows appellant's physical mannerisms and reactions were not normal. The testimony from the MCO lab personnel shows that drugs were found in appellant's body fluids. The testimony from the toxicologist showed that the levels of Ambien in appellant's body fluids exceeded therapeutic levels and showed that the drug normally has the effect of hindering a person's ability to perform a multi-function activity such as driving. Taken together, the evidence shows beyond a reasonable doubt that appellant was driving a vehicle under the influence of drugs of abuse. Appellant's fifth assignment of error is not well-taken.
The judgment of the Sylvania Municipal Court is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J.
 James R. Sherck, J.
 Melvin L. Resnick, J.
CONCURS IN JUDGMENT ONLY.
 APPENDIX A
June 24, 1997 Appellant charged with Misdemeanor of the first degree R.C. 4511.99 (A)(2)(a) State had ninety days to bring D to trial R.C. 2945.71(B)(2)
June 27, 1997 (3 days charged to state — 87 days left) D fails to appear — bench warrant issued Time tolled — R.C. 2945.72(D) "Any period of delay occasioned by the neglect or improper act of the accused."
July 25, 1997 D turns herself in — At request of D, case continued to August 6, 1997 Time tolled — R.C. 2945.72 (H) "The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion."
August 6, 1997 D requests a continuance to September 3, 1997 and signs a time waiver
 Says "I HEREBY KNOWINGLY, VOLUNTARILY AND INTELLIGENTLY WAIVE MY CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL AND TO HAVE THIS CASE TRIES [SIC] WITHIN THE TIME PRESCRIBED IN R.C. 2945.71."
Time tolled — R.C. 2945.72(H)
September 3, 1997 D enters not guilty plea Case continued until September 25, 1997 at defendant's request Time tolled — R.C. 2945.72(H)
September 25, 1997 Handwritten J.E. reads:
 "Motion of Pros to cont. trial date due to witness FTA and need to review test results is granted over Def. objection." Stamped entry reads:
"AT REQUEST OF DEFENDANT CONTINUE CASE TO:
_________________ AT ___________ AM PM
 ___ DEFT TO CONTACT ATTORNEY ___ TRIAL TO COURT/JURY TRIAL
 ___ PUBLIC DEFENDER APPOINTED ___ PRELIMINARY HEARING/HOLD
___ PRETRIAL CONFERENCE
 Date written in on line was October 29, 1997 Time written in on line was 9:30 and AM is circled
 An x is written in on the line before TRIAL TO COURT/JURY TRIAL
 Trial court may continue trial date at prosecution's request if "the continuance is (1) reasonable and (2) made by journal entry prior to the expiration of the time limit." State v. Pate (1996), Portage App. No. 95-P-0021, unreported. This is because: "Pursuant to R.C. 2945.71(H), the statutory time period may be tolled by a motion for continuance; however, if the motion is brought by a party other than the defendant, it may be granted only if the continuance is reasonable in both its purpose and its length." Id.
 — Re: continuance for witness's failure to appear
 "As long as the prosecutor used `due diligence' to insure the witness's attendance, the court does not abuse its discretion in granting a continuance on this basis." Id.
 — Proof that subpoena was issued shows state not at fault for witness's failure to appear.
 Trial court must state in "explicit terms the reason why the state sought the continuance and the basis upon which it decided to grant that continuance." Id.
 Must also consider if the "length of the continuance was reasonable." Id.
 Finally, must consider whether there is any prejudice to the defendant's rights. Id.
 Length of continuance is 35 more days (reasonable) No prejudice to D's rights caused by continuance Trial court stated the reasons why the state sought the continuance, but gave no basis upon which it decided to grant the continuance (did not cite legal basis for the decision)
 Arguably, the time is not tolled because of the failure to give any legal basis in the court's judgment entry granting the continuance.
 (If attribute to state, add 35 more days (assuming that Sept. 25 is counted too) so 38 days charged to state)
October 22, 1997 Prosecutor files a written motion for a continuance
— arresting trooper has a trial conflict
— MCO lab people have work conflict
October 28, 1997 Stamped J.E. says:
"MOTION OF PROSECUTOR TO CONTINUE _______
DUE TO: ________________________________
IS GRANTED. SEE MOTION. REFER CASE TO
ASSIGNMENT COMMISSIONER TO RESCHEDULE
____________ AFTER ___________.
 — first blank filled in with handwritten word "trial"
 — second blank filled in with "officer trial conflict and witness work conflict."
— third blank filled in with "trial"
— last blank filled in with 11/1/97
October 29, 1997 Handwritten J.E. says:
 "Def Motion to Dismiss Is Denied. Ref. to ass. commr. Case referred to assignment commissioner
November 6, 1997 Stamped entry reads:
"AT REQUEST OF DEFENDANT, ATTORNEY CONTINUE
CASE TO ___________
TIME WAIVED/NOT WAIVED"
 Blank filled in with 11-26-97 Words "NOT WAIVED" are crossed out Refer to 3 part test above Arguably time is still not tolled because of the inadequate judgment entry (If time is attributed to the state, add 28 more days (Oct. 30 — Nov. 26) for a total of 66 days charged to the state)
November 17, 1997 Defendant files motion to suppress Time used by court to consider a motion filed by a defendant is not charged to the state as long as the time is "reasonable" — See State v. Moening
(Feb. 27, 1991), Allen App. No. 1-90-4, unreported; R.C. 2945.72(H).)
TIME TOLLED
November 24, 1997 Prosecutor files motion to continue trial because defendant filed a motion to suppress Motion is granted
November 25, 1997 Prosecutor files a motion to strike defendant's motion to suppress — says motion not timely filed
November 26, 1997 "Defendant appeared with counsel to object to granting of continuance and move for dismissal. Motion denied. Case referred to A/C for trial date." Stamped entry reads:
"AT REQUEST OF DEFENDANT, ATTORNEY
CONTINUE CASE TO: ______________
TIME WAIVED/NOT WAIVED"
 Date written in on blank is 12-10-97 Words "NOT WAIVED" are crossed out No written motion to dismiss appears in the record. Oral motion is not sufficient to withdraw previous open-ended time waiver. State v. O'Brien (1987), 34 Ohio St.3d 7, paragraph two of the syllabus.
December 10, 1997 Hearing held on Motion to Strike Motion to Suppress. Motion granted on 3 items. Denied as to remaining item Stamped entry reads:
"AT REQUEST OF DEFT. CONTINUE CASE TO
___________ AT __________ AM PM
 ___ DEFT. TO CONTACT ATTORNEY ___ TRIAL TO COURT/JURY TRIAL
 ___ PUBLIC DEFENDER APPOINTED ___ PRELIMINARY HEARING/HOM
___ PRETRIAL CONFERENCE TIME WAIVED: YES __ NO __
___ TIME PREVIOUSLY WAIVED"
 Date written in is 12/30/97 Time written in is 1:30 and PM is circled Transcript from hearing shows appellant's counsel orally objected and asked for a motion to dismiss.
TIME TOLLED
 — No written motion to dismiss and demand for trial
— Portion of motion to suppress still pending
December 30, 1997 Defendant failed to appear. At defendant's request, continued to January 7, 1998 for hearing on motion and trial to court. Time tolled R.C. 2945.72(D)
January 7, 1998 Handwritten judgment says:
 "Hearing commenced as to Motion to Suppress Trial. Testimony of trooper towns completed — sole witness presented by Pros. Def having rested as to Motion to Suppress. Ct finds Reasonable Suspicion to Stop Probable Cause to arrest. That Miranda rights were * * * to defendant in a timely fashion and that trooper towns did not request that def submit to a chemical test of her blood breath or urine. Motion to Suppress is Denied."
 Trial has started before the full ninety days that can be charged against the state have run. No violation of speedy trial rights.